### HACKETT v CONNOR

1. CONTINUANCE—COURT RULES—POLICY—STIPULATION—GOOD CAUSE.

    The policy behind the court rule governing continuances is to encourage the diligent preparation and trial of cases; except where the court, within its discretion and to promote the ends of justice, adjourns a cause, continuance of any trial or hearing upon stipulation shall not be granted unless the stipulation is made in writing or made orally only in open court and is based upon good cause shown to the satisfaction of the court under all of the circumstances of the case and with a view toward speedy and substantial justice (GCR 1963, 503.1).

2. CONTINUANCE—ADJOURNMENT—EXTENDED TRIAL—PRIOR CONTINUANCES—DILIGENCE—INJUSTICE.

    Cases upholding a denial of a motion to adjourn involve some combination of these facts: an extended trial, numerous past continuances, no showing of diligence by the movant, and a lack of injustice to the movant.

3. CONTINUANCE—ADJOURNMENT—DISCOVERY—PRIOR CONTINUANCES—DILIGENCE—PREJUDICE.

    Denial of a motion for an adjournment was an abuse of discretion where the case was complex and without an adjournment the defendants did not have sufficient time for discovery, defendants had made no prior motion for an adjournment, there was no lack of diligence by the defendants, and granting the motion would not prejudice the plaintiffs nearly as much as its denial would prejudice the defendants.

4. JURY—RIGHT TO JURY TRIAL—CONSTITUTIONAL LAW—HISTORICAL RIGHT.

    The right to a jury trial exists for those issues which were

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Continuance §§ 1, 5, 6, 28, 35, 36, 43, 44.
[2] 17 Am Jur 2d, Continuance § 47.
[3] 17 Am Jur 2d, Continuance §§ 7–11, 29–33.
[4, 5] 16 Am Jur 2d, Constitutional Law §§ 14, 77.
  47 Am Jur 2d, Jury §§ 47–52.
[5, 6] 37 Am Jur 2d, Fraud and Deceit § 481.

historically tried by the law courts as of the time when the constitutional guarantee to the right of trial by jury was adopted.

5. JURY—RIGHT TO JURY TRIAL—CONTRACT—ORAL AGREEMENTS— FRUAD—EQUITY.

The right to a jury trial exists for a claim alleging the validity of oral agreements and seeking their enforcement; use of the word "fraud" in the complaint does not destroy the right to a jury trial where the word was used as a characterization of the defendants' behavior rather than as the type of detailed claim of fraud required by law.

6. FRAUD—CONTRACTS—MISREPRESENTATION—RIGHT TO JURY TRIAL.

Plaintiffs' allegation that defendant induced them to sign a contract by misrepresenting its contents was an allegation of fraud properly cognizable by the trial court without a jury.

Appeal from Oakland, James S. Thorburn, J. Submitted Division 2 September 30, 1974, at Detroit. (Docket No. 20899.) Decided January 29, 1975.

Complaint by Patrick Hackett and Dorothy Hackett against Clyde C. Connor, Eileen Connor, Connor Beef Buffet, Inc., Connor Johnson Corporation, Connor Bon Air Corporation, Connor Penn Corporation, and C & E Franchise, Inc., for enforcement of oral agreements concerning restaurant operations, and for damages for fraud. Judgment for plaintiffs. Defendants appeal. Reversed and remanded.

*Harty, Austin & Jones,* for plaintiffs.

*Thomas R. Sullivan,* for defendants.

Before: LESINSKI, C. J., and BASHARA and O'HARA,* JJ.

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

LESINSKI, C. J. Defendants appeal from a judgment entered against them by Oakland County Circuit Court Judge James Thorburn, sitting without a jury, on June 22, 1974.

Plaintiffs based their complaint on an oral agreement which they allege defendant Clyde Connor made with Patrick Hackett in 1964. At the time of this agreement, defendants Clyde and Eileen Connor were in the process of building a restaurant, Connor's Finer Foods, which they wanted the Hacketts to manage. Plaintiffs alleged that, in return for their promise to run the restaurant, the Connors promised them a salary, the right to purchase one-third of the shares of Connor Beef Buffet, Inc., the controlling corporation, and the right to purchase one-third of the realty on which the restaurant was located.

Plaintiffs claimed further that defendants Connor also promised plaintiffs the right to purchase one-third of any restaurant operation which the Connors might organize in the future and one-third of any such restaurant's realty. Plaintiffs also alleged a later oral agreement in which Clyde Connor promised them a one-third interest in any franchise operation established by Connor. The Connors later built three more restaurants, and organized C & E Enterprises, Inc., to collect franchise fees from them.

In their involved complaint, plaintiffs alleged that defendants breached the 1964 agreement in several respects and "have fraudulently refused to account to plaintiffs for their interest in Restaurants No. 1, No. 2, No. 3, and No. 4 and the C & E Franchise, Inc.[1]" Specifically, plaintiffs claim that a salary was never paid, that they were over-

---

[1] The proper name of this corporation is C & E Enterprises, Inc. The parties stipulated to amend the complaint to correct this error.

charged more than $14,000 for their one-third interest in Connor Beef Buffet, Inc., that they were not allowed to purchase as much of the other restaurant corporations or realty as had been promised, that Clyde Connor fraudulently induced them to sign away their voting and stock transfer rights in defendant Connor Johnson Corporation, and that they were never paid any part of the franchise fees collected by C & E Enterprises, Inc. Defendants respond by acknowledging a 1964 agreement, but they differ as to its terms. They deny the existence of the franchise agreement.

Plaintiffs' complaint was served on April 2, 1974. At that time trial was set for June 6. Defendants filed an answer on May 16, 1974; on the same day defendants filed a motion for an adjournment. Defendants also filed a timely request for a jury trial. After hearings, the trial court denied both the motion and the request.

On the day of trial, June 17, defendants' attorney requested a continuance, claiming that he had not completed discovery and could not proceed. When the trial judge denied his request, defendants' attorney stated that he could, in no event, proceed, and left the courtroom. The trial court proceeded to admit the depositions of Clyde and Eileen Connor and of their accountant, Paul Gusho, and to hear the brief testimony of Patrick Hackett. The court granted a continuance to plaintiffs to prepare an order which it issued, verbatim, the next day. The court ordered defendants to return all monies paid by plaintiffs to defendants, and awarded to plaintiffs all the stock in Connor Beef Buffet, Inc., and one-third of the stock in each of the other three restaurants. The court also awarded to plaintiffs one-third interest in the realty of each restaurant. Defendants were also

ordered to pay to plaintiffs one-third of all franchise fees which had been collected and one-third of all future fees, as well as $234,828.64 in back salaries and damages.

Defendants make four assignments of error. We will treat two of these which we find meritorious and dispositive of this appeal. First, they assert that the trial court erroneously denied their motion for an adjournment. They noted the limited amount of time given to prepare a defense for such a complex case and stressed the lack of time allowed for discovery.

The controlling law, GCR 1963, 503.1, states in relevant part:

"It is the policy of this rule to encourage the diligent preparation and trial of cases. Except where the court, within its discretion and to promote the ends of justice, adjourns a cause, continuance of any trial or hearing upon stipulation shall not be granted unless the stipulation is made in writing or made orally only in open court and is based upon good cause shown to the satisfaction of the court under all of the circumstances of the case and with a view toward speedy and substantial justice."

We find that the trial court abused its discretion in denying defendants' motion to adjourn. Cases upholding a trial court's denial of a motion to adjourn have always involved some combination of the same facts: an extended trial, numerous past continuances, *Sams v O'Sheskey,* 323 Mich 177; 35 NW2d 234 (1948); no showing of diligence by the movant, *McKay v Black,* 5 Mich App 711; 147 NW2d 735 (1967); and a lack of injustice to the movant, *Snyder v Snyder,* 42 Mich App 573; 202 NW2d 504 (1972). These facts are absent in this case. Here, defendants had made no prior motion. Granting of the motion would not have prejudiced

the plaintiffs nearly as much as its denial has harmed defendants. While granting the motion would have delayed the trial two months, denying the motion took from defendants their ability to try the case.

Further, we find that defendants' inability to try the case was not caused by a lack of diligence in preparation. As defendants point out, the trial court's denial of their motion for an adjournment deprived them of a chance to complete discovery. Defendants stated to the trial court that they needed the adjournment to secure the depositions of several other interested parties. The complexity of the case supports defendants' claim that two months from the filing of the original complaint was not sufficient time for completion of discovery. Plaintiffs' allegations spanned a 10-year period, involved more than one million dollars in assets, and contained lengthy contentions of corporate mismanagement. In light of these factors, defendants' request for an adjournment was a reasonable one and should have been granted.

Defendants' second claim of error is that the trial court erroneously denied their request for a jury trial. They argue that because the terms of the 1964 oral agreement and the existence of the later franchise agreement are issues traditionally cognizable at law, a jury trial is required for them. To determine the merits of this claim, we must ascertain whether the issues raised by plaintiffs' complaint were "historically * * * tried by the law courts or by the chancellor, as of the time when the constitutional guarantee to the right of trial by jury was adopted". 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 414. See also, *Abner A Wolf, Inc v Walch,* 385 Mich 253; 188 NW2d 544 (1971). Plaintiffs' complaint

contains two distinct allegations: (1) that the parties entered into two oral agreements which the defendants "fraudulently" breached, and (2) that defendants induced plaintiffs to execute a contract which transferred away plaintiffs' stock rights by misrepresenting the contents of the contract.

If the first claim sought enforcement of alleged oral agreements, a jury trial would have been required. *Davis v Kramer Bros Freight Lines, Inc,* 361 Mich 371; 105 NW2d 29 (1960); *Sharon v Fee,* 203 Mich 152; 168 NW 1045 (1918). If it requested a remedy for fraud, no jury trial would have been necessitated, *Marshall v Ullmann,* 335 Mich 66; 55 NW2d 731 (1952). An examination of plaintiffs' complaint clearly discloses that plaintiffs did allege the validity of the oral agreements and seek enforcement of those agreements. A right to a jury trial exists and, having been timely requested, it should have been granted. The only mention of fraud by plaintiffs is a claim that defendants Connor "fraudulently" breached the alleged agreements. This claim appears more as a use of the word "fraud" to characterize defendants' behavior rather than as the type of detailed claim of fraud required by law. Plaintiffs' second allegation, that defendant Clyde Connor induced them to sign a contract by misrepresenting its contents, did represent an allegation of fraud and was properly cognizable by the trial court without a jury. *Marshall v Ullmann, supra.*

Because of the prejudice resulting from defendants' inability to complete discovery and because the most crucial issue involved, the existence of the two oral agreements, must be decided by a jury, we reverse and remand for a new trial on all issues.

Reversed and remanded. Costs to defendants.